UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | |
|---|---|
| JOHN REINTS,<br><br>     Plaintiff,<br><br>  vs.<br><br>CITY OF RAPID CITY, SOUTH DAKOTA; and JASON GREEN, BRAD SOLON, JOEL LANDEEN, WADE NYBERG, and ANDY CHLEBECK, in their individual capacities,<br><br>     Defendants. | 5:13-CV-05043-JLV<br><br><br>REPORT AND RECOMMENDATION |

## INTRODUCTION

This matter is pending before the court on plaintiff John Reints' *pro se* amended complaint pursuant to 42 U.S.C. §§ 1983 and 1988. See Docket No. 48. Now pending is a motion for summary judgment by all defendants. See Docket No. 123. Mr. Reints opposes the motion. See Docket No. 140. This motion was referred to this magistrate judge for a recommended disposition pursuant to 28 U.S.C. § 636(b)(1)(B) and the standing order of the Honorable Jeffrey L. Viken, Chief United States District Judge. See Docket No. 143.

## FACTS

Pursuant to local rule, defendants supported their motion for summary judgment with a separate statement of undisputed material facts. See Docket No. 127. Mr. Reints responded to defendants' statement of facts (see Docket No. 133), and also filed his own statement of material facts (see Docket No.

134).  The following statement of facts are taken from those documents as well as from Mr. Reints' amended complaint and his deposition.  Disputes of material facts are noted.

Because the court accepts defendants' statute of limitations argument as discussed in further detail below in the DISCUSSION portion of this opinion, the court discusses herein only those facts beginning three years prior to the date Mr. Reints filed his complaint in this case.  The complaint was filed June 7, 2013, so the court begins with facts dating back to June, 2010.

Mr. Reints alleges in early summer 2010, defendant Wade Nyberg was then assistant city attorney in charge of ordinance enforcement regarding Mr. Reints.  Mr. Reints was away from his Rapid City home for a prolonged period of time in early summer 2010.[1]  Mr. Reints alleges Mr. Nyberg knew this at the time as the two of them were emailing each other about another matter.

---

[1] Mr. Reints has lived a somewhat peripatetic life.  A year after graduating high school in Rapid City he embarked on an eight-year college trek that took him to many different states and colleges.  After graduating college, he lived in several states before moving to Mexico for more than a decade.  He returned to Rapid City to take care of his mother in her last illness and was homebound for the last two years of her life as he cared for her around the clock.  After his mother's death, Mr. Reints resumed in limited fashion his former lifestyle.  He testified that, beginning in 2005, there were periods of somewhat prolonged absences from his house consisting of one-, two- or three-month absences at a time.  See Docket No. 126-16 at p. 88, lines 18-25 (depo. p. 87).  These absences were for personal reasons, recreational travel, and in one case visiting an ill friend.  Id. at pp. 90-91 (depo. pp. 89-90).  In the summer of 2010, while visiting a friend, Mr. Reints developed an eye condition for which travel was contraindicated and that extended his absence from home by an additional 10 or 11 weeks.  Id. at pp. 91-93 (depo. pp. 90-92); Docket No. 126-17 at p. 93 (depo. p. 191).  During some periods of his absences, but not all, Mr. Reints had a loose non-compensated arrangement with a friend to check on his property and get his mail approximately once per month.  Id. at pp. 91-98 (depo. pp. 90-97); Docket No. 126-17 at pp. 1-2 (depo. pp. 99-100).  During

2

Sometime prior to June 11, 2010, Gary Garner, City Forester, inspected a Chinese elm tree in Mr. Reints' front yard at the request of defendant Andy Chlebeck.  Mr. Garner pronounced the tree to be dead.  On June 11, 2010, Mr. Chlebeck issued a notice of ordinance violation to Mr. Reints indicating the presence of a dead tree in front of his yard and requiring that Mr. Reints remove it.  This notice was mailed via United States mail, first class, to Mr. Reints' home.  The notice contained a seven-day appeal period.  The notice also stated the property would be inspected again on June 28, 2010 (more than 7 days after the notice) and that failure to comply with the notice may result in abatement of the nuisance by the city.

Mr. Reints, due to his absence, alleges he did not receive notice of the ordinance violation until July 23, 2010, when Mr. Nyberg emailed the notice to him.  Mr. Reints alleges he appealed the notice as quickly as he could and demanded an electronic hearing with Mr. Garner.  Mr. Garner denied the appeal on the grounds that the seven-day appeal period had run.  Mr. Garner communicated this appeal denial to Mr. Reints via email.

The city removed the tree in question from Mr. Reints' yard July 27, 2010.  Mr. Reints maintains the tree was very much alive and not dead.  He has supplied the affidavit of his friend (who was looking after his house for him in his absence), that the tree was "fully alive and covered with healthy, green foliage, about a week before it was cut down."  See Docket No. 48-2 at p. 1.

---

these absences, Mr. Reints did not arrange for anyone to regularly mow his grass.  Id.  He had a weed eater which he said the friend could use to mow the lawn with.  Id.

However, Mr. Reints himself submitted photos of the tree clearly showing a dead, leafless tree in his yard.  See Docket Nos. 138-5, 138-6, and 138-7. Mr. Reints disparages these photos, supplied to him by the city, as photos in which a false, sepia color has been applied.  Two of the photos are sepia-colored, but all three photos clearly show other trees and bushes with full vegetation and leaves on them while the dead tree has no leaves.  Id.  The city assessed Mr. Reints for the cost of removing the tree.

On July 21, 2010, while Mr. Reints was away from home, the city mailed a notice of ordinance violation to his home stating that the van in his driveway was a junk abandoned unlicensed vehicle which must be removed.  The notice indicated the city would inspect the property again on August 6, 2010, and would abate the condition itself if Mr. Reints did not take corrective action.

Again, Mr. Reints alleges he did not receive notice of this ordinance violation and the city towed the van away in his absence.  Mr. Reints asserts the van was fully operational.  He alleges his demands to Mr. Nyberg that his vehicle be returned to him were not met.  The city maintains that Mr. Reints' van was subject to retrieval by him, but that he chose not to reclaim the van.

In his deposition, Mr. Reints admitted that he could have retrieved his van from Olson Towing by paying the daily storage rate due on the vehicle.  See Docket No. 126-18 at p. 37-38 (depo. pp. 235-36).  However, he alleges the storage bill was more than the value of the van by the time Mr. Reints returned to Rapid City.  Id.  Mr. Reints agreed the value of the van was somewhere between $2,000 and $3,000 at the time the city impounded it.  See Docket No.

4

138-18 at p. 37 (depo. p. 235).  The storage fees would have begun to accumulate on August 10, 2010,  when the van was first towed.  Mr. Reints became aware the van had been towed on August 15 and he agreed in his deposition he probably could have arranged for a friend to retrieve the van at that time for a sum much less than the van's total value, but he did not arrange to do so.  See Docket No. 126-18 at p. 39 (depo. p. 237).

When Mr. Reints demanded photographs of the tree and the van before the city took them, he alleges Mr. Nyberg sent him grossly manipulated photos that did not depict reality.

After the removal of the tree and the van, the city levied special assessments against Mr. Reints for the cost of those removals in the amount of $1,133.21.  Included in the special assessments was $370 for the city's abatement of too-tall grass and weeds during June and July, 2010.  Mr. Reints appealed these special assessments to the Rapid City Common Council, but missed attending the November 1, 2010, hearing date.  Mr. Reints asserts that the city deliberately failed to notify him of the hearing date.  When Mr. Reints heard of this, he alleges he sought a continuance of the hearing which was denied by the city and Mr. Nyberg.

Mr. Reints did not pay the special assessment.  The city passed the special assessment on to Pennington County to be collected through property tax procedures.  In 2013, the county then sent a notice of unpaid taxes to Mr. Reints' mortgage lender, which then paid the sum out of Mr. Reints' escrow account associated with his mortgage.  Mr. Reints alleges his financial

situation is so precarious that this special assessment created a crisis threatening his ability to remain in his home.[2]

Mr. Reints alleges that on August 20, 2010, he had a conversation with Mr. Chlebeck wherein Mr. Chlebeck agreed to email any future ordinance violation notices to Mr. Reints due to Mr. Reints' continued absence from Rapid City. Thereafter, Mr. Reints alleges Mr. Chlebeck violated this agreement and issued him six notice of ordinance violations which were delivered to Mr. Reints via United States mail, first-class. Three of the notices were issued before June 7, 2013, one was issued approximately on June 7, 2013, and two were issued after the complaint was filed in this case. Each of the notices contained a three-day appeal period which is applicable under city ordinance if a property has been the subject of prior ordinance violation notices and abatements. Mr. Reints alleges he did not receive timely notice of any of these notices.

In his amended complaint, Mr. Reints does not describe in any detail what five of these notices alleged in terms of the ordinance violations. He merely states they were "unconstitutionally vague" because they did not state the location of the violation. Defendants have supplied copies of two of the notices. The first was dated February 25, 2011, and was for snow and ice on

---

[2] But see Reints v. Pennington County, 869 N.W.2d 466 (S.D. 2015). Mr. Reints brought an action seeking to prevent the county from collecting property taxes against him in the same year—2013—as the county sent the notice to Mr. Reints' mortgage lender. The South Dakota Supreme Court agreed with Mr. Reints' interpretation of South Dakota property tax statutes. Therefore, it is not at all clear that Mr. Reints' continued residency in his home is threatened by the special assessments. At the time of his deposition in April, 2019, Mr. Reints continued to reside in his home.

Mr. Reints' sidewalk.  See Docket No. 124-9.  The special assessment for this violation was $207.  Mr. Reints appealed to the city council the special assessment related to the city's abatement of this ordinance violation.  The city voted to affirm the special assessment.

On August 30, 2011, defendant Brad Solon sent Mr. Reints a notice to appear before the International Building Code Board of Appeal.  Mr. Reints responded in writing asking what the issues were that would be discussed before the board.  Mr. Solon did not respond.  Mr. Reints then wrote to Mr. Solon's superviser, asking the same question and got the same response.  Finally, Mayor Sam Kooiker, who had been copied on the letter, wrote to Mr. Reints himself and told him the proposed appearance did not involve any alleged ordinance or code violation.  Mr. Reints does not state what became of the proposed meeting.

Another of the six violations was issued August 21, 2012, for "too-tall grass and weeds."  Despite not receiving notice of the violation until after the three-day appeal period had expired, Mr. Reints filed a notice of appeal September 2, 2012.  This was after the abatement had already been carried out.

A hearing on Mr. Reints' appeal was scheduled before the newly-established Code Enforcement Board of Appeal on September 19, 2012, but Mr. Reints refused to attend the hearing in protest because he maintained that a post-deprivation hearing was meaningless.  Mr. Chlebeck attended the hearing and testified Mr. Reints had received notice of the too-tall grass and

weeds and failed to fix the problem himself.  The board affirmed the special assessment for the abatement.  Mr. Reints has never paid the assessment.

Mr. Reints alleges two of the board members expressed personal animus toward him.  One member allegedly said he had complained about the state of Mr. Reints' property each year for the last ten years.  Another board member allegedly opined that Mr. Reints' home was uninhabitable.  Neither of these board members are named defendants herein.  When the city attorney, present at the hearing, cautioned the two members that the board did not have the jurisdiction to declare a home uninhabitable, Mr. Reints alleges the two members indicated they would act privately outside the board to oust Mr. Reints from his home.

Because he alleges he feared being ousted from his home, Mr. Reints did not appeal the other ordinance violation notices and their accompanying special assessments for the period between August, 2010, and 2014. Mr. Reints alleges in his amended complaint that, as of December, 2011, he had decided to begin preparations to move from Rapid City because of defendants' actions.  However, other litigation indicates he continued to live in his home at least through part of 2013.  See footnote one, *supra*.

Mr. Reints alleges nine separate causes of action:

1.    violation of his Fourteenth Amendment procedural due process rights

2.    violation of his Fourteenth Amendment substantive due process rights

3.    violation of his First Amendment right to petition the government for redress of his grievances

8

4.    taking of his property without just compensation in violation of the Fifth Amendment takings clause

5 & 6 violation of his Fourteenth Amendment equal protection rights under 42 U.S.C. §§ 1983 and 1988

7.    conspiracy by defendants to violate his constitutional rights

8.    civil conspiracy to violate state and federal law

9.    violation of his due process rights guaranteed under state law.

Mr. Reints requests money damages, including punitive damages, from the individual defendants and the city. From the city alone he seeks equitable relief. Defendants now move for summary judgment in their favor on all counts, alleging qualified immunity and statute of limitations. See Docket No. 123. Mr. Reints resists the motion. See Docket Nos. 140 & 141.

## DISCUSSION

### A.    Summary Judgment Standard

Under Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment is appropriate where the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a).

The court must view the facts, and inferences from those facts, in the light most favorable to the nonmoving party. See Matsushita Elec. Co. v. Zenith Radio Corp., 475 U.S. 574, 587–88 (1986) (citing United States v. Diebold, Inc., 369 U.S. 654, 655 (1962)); Helton v. Southland Racing Corp., 600 F.3d 954, 957 (8th Cir. 2010) (per curiam). Summary judgment will not lie if the evidence is such that a reasonable jury could return a verdict for the

nonmoving party.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Allison v. Flexway Trucking, Inc., 28 F.3d 64, 66 (8th Cir. 1994).

The burden is placed on the moving party to establish both the absence of any genuine issue of material fact and that the moving party is entitled to judgment as a matter of law.  FED. R. CIV. P. 56(a).  Once the movant has met its burden, the nonmoving party may not simply rest on the allegations in the pleadings, but must set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists.  Anderson, 477 U.S. at 256; FED. R. CIV. P. 56(e) (each party must properly support its own assertions of fact and properly address the opposing party's assertions of fact, as required by Rule 56(c)).

The underlying substantive law identifies which facts are "material" for purposes of a motion for summary judgment.  Anderson, 477 U.S. at 248. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.  Factual disputes that are irrelevant or unnecessary will not be counted."  Id. (citing 10A CHARLES ALAN WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE § 2725, at 93–95 (3d ed. 1983)).  "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact."  Id. at 247–48.

Essentially, the availability of summary judgment turns on whether a proper jury question is presented:  "The inquiry performed is the threshold

inquiry of determining whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Id. at 250.

Though *pro se* litigants like Mr. Reints are entitled to a liberal construction of their pleadings, FED. R. CIV. P. 56 remains equally applicable to them. Quam v. Minnehaha Co. Jail, 821 F.2d 522, 522 (8th Cir. 1987). The court is not required to "plumb the record in order to find a genuine issue of material fact." Barge v. Anheuser-Busch, Inc., 87 F.3d 256, 260 (8th Cir. 1996). Courts must remain sensitive, however, "to the special problems faced by [pro se litigants] attempting to proceed *pro se* in vindicating their constitutional rights, and [the Eighth Circuit does] not approve summary dismissal of such *pro se* claims without regard for these special problems." Nickens v. White, 622 F.2d 967, 971 (8th Cir. 1980).

**B.    Statute of Limitations**

The defendants assert that some of Mr. Reints' claims are barred by the applicable statute of limitations. Mr. Reints' amended complaint spans 47 pages and includes factual allegations from 2001 up to June 7, 2013, the date of the complaint. See Docket No. 48. Defendants assert that any claims occurring prior to the three-year statute of limitations period—any actions occurring prior to June 7, 2010—should be dismissed by the court. There is no federal statute of limitations for actions brought under 42 U.S.C. § 1983, so courts are directed to adopt a local statute of limitations for

11

analogous causes of action "if not inconsistent with federal law or policy to do so." See Wilson v. Garcia, 471 U.S. 261, 266-67 (1985). The Garcia Court held that, for § 1983 actions, the most analogous state limitations period was the limitations period applicable to personal injury actions. Id. at 280.

Garcia was partially superseded by passage of a "catch-all" statute of limitations for federal actions. See 28 U.S.C. § 1658, as recognized in Jones v. R.R. Donnelley & Sons Co., 541 U.S. 369, 377-81 (2004). If a plaintiff's claim "arises under" a federal statute that was enacted by Congress after 1990, then a four-year statute of limitations applies. See 28 U.S.C. § 1658. Although § 1983 was amended after 1990 (in 1996), those amendments have to do with immunity for judicial officers from injunctive relief. See 42 U.S.C. § 1983. Thus, actions such as Mr. Reints' claim do not "arise under" the 1996 amendments, but under the pre-1990 text of § 1983. See Williams v. Hawkeye Community College, 494 F. Supp. 2d 1032, 1038 (N.D. Iowa 2007). Accordingly, Garcia continues to control the analysis. DeVries v. Driesen, 766 F.3d 922, 923-24 (8th Cir. 2014); Williams, 494 F. Supp. 2d at 1038.

South Dakota enacted a specific three-year statute of limitations for federal civil rights actions. See SDCL § 15-2-15.2. The state's limitations period for personal injury actions is identical: three years. See SDCL § 15-2-14(3). So, applying either statute, Mr. Reints had three years "after the alleged constitution deprivation has occurred" to bring suit. See SDCL § 15-2-15.2. Mr. Reints brought suit on June 7, 2013, the date he filed his complaint with the court. See Fed. R. Civ. P. 3; Docket No. 1. In order to apply

12

the statute of limitations, the court must first determine (1) when Mr. Reints' claims accrued and (2) whether the limitations period should be tolled.

Federal law governs the question of when a § 1983 cause of action accrues. Wallace v. Kato, 549 U.S. 384, 388 (2007). Accrual occurs when the plaintiff has " 'a complete and present cause of action,' that is, when 'the plaintiff can file suit and obtain relief.' " Id. (quoting Bay Area Laundry & Dry Cleaning Pension Trust Fund v. Ferbar Corp. of Ca., 522 U.S. 192, 201 (1997)) (cleaned up).

Clearly, Mr. Reints' cause of action for each ordinance violation notice was complete upon the conclusion of the process associated with that notice. For Mr. Reints' procedural due process claims, that is when he could file suit for inadequate notice and/or opportunity to be heard. Similarly, with regard to his substantive due process claim, this is when it could be known whether defendants' actions "shocked the conscience." His right to petition his government for redress and his right to equal protection under the law would also have accrued at this time.

It is clear that Mr. Reints was aware of the accrual of his causes of action at the time those actions accrued. He asserts in his amended complaint that in the spring of 2007, he began to prepare his court pleadings to assert a cause of action and even went so far as to serve the city with the statutorily-required notice that he intended to sue. See Docket No. 48 at pp. 22-24, ¶¶63-68.

13

Ultimately, though, he decided to "let sleeping dogs lie" and he did not assert his claims at that time.[3] Id. at p. 24, ¶68.

Mr. Reints protests that the claim he was planning on submitting in the spring of 2007 was a claim for malicious prosecution, not the current constitutional violations he now asserts.[4] But this is a difference without a distinction. The cause of action accrues when Mr. Reints could have filed suit and obtained relief, no matter the legal theory. As he clearly knew himself, his right to file an action and try to obtain relief had accrued in the spring of 2007 for actions which took place up to that time.

Mr. Reints also argues that the statute of limitations should be tolled because the defendants engaged in a continuing course of the same conduct. South Dakota law recognizes the continuing tort theory. "A continuing tort occurs when a wrongful act persists over time." Brandt v. Cty. of Pennington, 827 N.W.2d 871, 875 (S.D. 2013). "To constitute a continuing tort, . . . all elements of the tort must be continuing, including breach of duty and damages." Id. "A continuing tort tolls the statute of limitations . . . . The reason a continuing tort suspends the running of the statute of limitations is that when no discrete occurrence in continually wrongful conduct can be singled out as the principal cause of the damage, the law regards the

---

[3] Mr. Reints also testified in his deposition that he contemplated suing the city under § 1983 in 2003 also. See Docket No. 126-17 at p. 87, lines 5-18 (depo. p. 185).

[4] Mr. Reints' deposition testimony seems to be otherwise—he agreed that he contemplated filing a § 1983 action against the city in both 2007 and 2003. See Docket No. 126-17 at p. 87, lines 5-18 (depo. p. 185).

cumulative effect as actionable, and allows the limitations period to begin when the wrongful conduct ends." Id.

Here, Mr. Reints' assertion of a continuing tort is belied by his own assertions in his amended complaint.  After reciting that he was on the cusp of suing the city in the spring of 2007, see Docket No. 48 at p. 24, ¶68, the next allegedly violative behavior he asserts in his complaint are events in the early summer of 2010.  See id. at p. 24, ¶69.  Mr. Reints does not allege in his amended complaint that any violative acts took place between spring 2007 and early summer 2010.  Id.  It follows, then, that the city's allegedly violative behavior ceased for those three years—i.e. it was non-continuing.  At the very least, Mr. Reints is not asserting any conduct during those three years as the basis for any of his claims herein.  Thus, the continuing tort theory does not apply under the facts alleged by Mr. Reints.

The court agrees with defendants.  The statute of limitations bars any consideration by this court of acts by defendants which allegedly occurred more than three years before the filing of Mr. Reints' complaint in this matter. Therefore, in considering Mr. Reints' claims, only those facts and causes of actions premised on acts occurring within the three years prior to the filing of the complaint in this matter are discussed.

**C.    Qualified Immunity**

**1.    The Law of Qualified Immunity**

In order to show a *prima facie* case under 42 U.S.C. § 1983, Mr. Reints must show (1) defendants acted under color or state law and (2) " 'the alleged

15

wrongful conduct deprived him of a constitutionally protected federal right.' " Zutz v. Nelson, 601 F.3d 842, 848 (8th Cir. 2010) (quoting Schmidt v. City of Bella Villa, 557 F.3d 564, 571 (8th Cir. 2009)).

Qualified immunity protects government officials from liability and from having to defend themselves in a civil suit if the conduct of the officials "does not violate clearly established statutory or constitutional rights." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). Qualified immunity is immunity from suit, not just a defense to liability at trial. Mitchell v. Forsyth, 472 U.S. 511, 526 (1985). Therefore, the Supreme Court has "repeatedly stressed the importance of resolving immunity questions at the earliest possible stage in litigation." Hunter v. Bryant, 502 U.S. 224, 227 (1991).

To determine whether an official may partake of qualified immunity, two factors must be determined: (1) whether the facts that plaintiff has shown make out a violation of a constitutional right and (2) whether that constitutional right was "clearly established" at the time of the official's acts. Saucier v. Katz, 533 U.S. 194, 201 (2001). If the court finds that one of the two elements is not met, the court need not decide the other element, and the court may address the elements in any order it wishes "in light of the circumstances of the particular case at hand." Pearson v. Callahan, 555 U.S. 223, 236 (2009). Defendants are entitled to qualified immunity if the answer to either of the Saucier prongs is "no."

The question of whether a constitutional right was clearly established may not be formulated at a "high level of generality." Mullenix v. Luna, 577

16

U.S. ___, 136 S. Ct. 305, 308 (2015).  Rather, the Court requires that the inquiry be based on the specific context of the case, not a broad general proposition.  Id.  The Court has made clear there must be a case nearly factually squarely on point decided by the Supreme Court before a constitutional right can be considered "clearly established."  Id. at 308-09.  For example, a plaintiff's right to be free from excessive force is not the appropriate inquiry.  Id.  Instead, the court must ask whether the right to be free from lethal force was clearly established in the context of a fleeing disturbed felon in the immediate area of persons to whom a risk of harm is posed by the felon's flight.  Id. at 309 (discussing Tennessee v. Garner, 471 U.S. 1 (1985)).

"Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments," and "protects 'all but the plainly incompetent or those who knowingly violate the law.' "  Stanton v. Sims, 571 U.S. 3, 5-6 (2013) (quoting Ashcroft v. al-Kidd, 563 U.S. 731 (2011) (quoting Malley v. Briggs, 475 U.S. 335, 341 (1986))).  " 'We do not require a case directly on point' before concluding that the law is clearly established, 'but existing precedent must have placed the statutory or constitutional question beyond debate.' "  Stanton, 571 U.S. at 5.  " 'Officials are not liable for bad guesses in gray areas; they are liable for transgressing bright lines.' "  Ambrose v. Young, 474 F.3d 1070, 1077 (8th Cir. 2007) (quoting Hunter, 502 U.S. at 229).

The Supreme Court has stated that "if the defendant does plead the [qualified] immunity defense, the district court should resolve that threshold

17

question before permitting discovery." <u>Crawford-El v. Britton</u>, 523 U.S. 574,
598 (1998) (citing <u>Harlow</u>, 457 U.S. at 818).  The Court held that a "firm
application of the Federal Rules of Civil Procedure is fully warranted and may
lead to the prompt disposition of insubstantial claims."  <u>Id.</u> at 597 (quoting
<u>Harlow</u>, 457 U.S. at 819-20, n.35 (quoting <u>Butz v. Economou</u>, 438 U.S. 478,
508 (1978))).

Only if the plaintiff's claims survive a dispositive motion on the issue of
qualified immunity will the plaintiff "be entitled to some discovery."  <u>Crawford-
El</u>, 523 U.S. at 598.  Even then, the Court has pointed out that FED. R. CIV. P.
26 "vests the trial judge with broad discretion to tailor discovery narrowly and
to dictate the sequence of discovery."  <u>Id.</u>  Such discretion includes the ability
to establish limits on the number of depositions and interrogatories, to limit
the length of depositions, to limit the number of requests to admit, to bar
discovery on certain subjects, and to limit the time, place, and manner of
discovery as well as its timing and sequence.  <u>Id.</u>

The qualified immunity defense applies only to individual capacity claims
against defendants for money damages; it does not affect official capacity
claims for declaratory and injunctive relief.  <u>Pearson</u>, 555 U.S. at 242-43
(2009); <u>Hafer v. Melo</u>, 502 U.S. 21, 25 (1991); <u>Grantham v. Trickey</u>, 21 F.3d
289, 295 (8th Cir. 1994).  Here, Mr. Reints' claims against the five remaining
individual defendants are asserted in their individual capacities, not official
capacities.

### 1. Procedural Due Process

The due process clause of the Fourteenth Amendment provides that the government shall not deprive citizens of life, liberty or property without due process of law. See U.S. CONST. amend. XIV, § 1. The procedural prong of the due process clause "requires adequate notice and an opportunity to be heard at a meaningful time and in a meaningful manner" and does not necessarily entail formal proceedings. See Matthews v. Eldridge, 424 U.S. 319, 348-49 (1976); Marler v. Missouri State Bd. of Optometry, 102 F.3d 1453, 1456 (8th Cir. 1996).

Procedural due process is a flexible concept with the processes being required dependent upon the importance of the interest at stake. Walters v. Nat'l. Assoc. of Radiation Survivors, 473 U.S. 305, 320 (1985). When an employee acting under color of state law deprives a plaintiff of property, the deprivation does not run afoul of the due process clause if a meaningful postdeprivation remedy for the loss is available. Clark v. Kansas City Missouri Sch. Dist., 375 F.3d 698, 702 (8th Cir. 2004). That is because the property loss is not considered complete until and unless the state refuses to provide a suitable postdeprivation remedy. Id. (citing Logan v. Zimmerman Brush Co., 455 U.S. 422, 435-36 (1982)).

Where state law recognizes the right to replevin for a person claiming to be the lawful owner of property held by another, that state law provides an adequate state remedy. Id. Also, where damages are provided under state law

for the taking of or injuring property, there is an adequate postdeprivation remedy.  Id.

Here, due to the statute of limitations analysis discussed above, the court considers Mr. Reints' procedural due process claims with regard to the (1) removal of his Chinese elm tree, (2) removal of his van, (3) abatement of snow and ice on his sidewalk in early 2011, (4) abatement of too-tall grass on August 12, 2012, and (5) four other unspecified notices of ordinance violations issued between August, 2010, and the filing of Mr. Reints' amended complaint.

With regard to each of these, Mr. Reints complains that the process did not satisfy constitutional standards because the notices were mailed to him and he was away from his residence for an extended period of time. Defendants have shown, and Mr. Reints does not dispute, that city ordinances specify serving notices of ordinance violations upon citizens via the United States Mail.[5]

The notices as to the tree and the van were subject to a seven-day appeal period.  The other notices were subject to a three-day appeal period because Mr. Reints' property had been subject to prior violation notices and abatements.  Mr. Reints asserts that notice by email should have been afforded

---

[5] The court notes that, as to ordinance violations which occurred prior to the limitations period—prior to June, 2010—Mr. Reints testified in his deposition that in each of these cases, Mr. Reints responded to the notice by fixing the alleged nuisance himself.  See Docket No. 126-16 at pp. 64-71 (depo. pp. 63-70).  But he requested an appeal with the city because he believed the notices were void for vagueness.  Id.  No hearing ever took place in regard to these earlier notices, presumably because the nuisance was resolved by Mr. Reints and the city was never required to take any abatement action.  Id.

him because notice by mail resulted in the nuisances being abated by the city prior to the time Mr. Reints was able to object or appeal.[6]

In fact, though, the city did not abate the nuisance associated with the tree until approximately six weeks after the notice of that nuisance was issued.[7]  Similarly, the city did not abate the van nuisance until 20 days after the notice was issued.[8]  This certainly allowed Mr. Reints adequate time to receive actual notice of the proposed property deprivation and to be able to address it by objecting or appealing prior to the city's abatements.  If Mr. Reints did not take steps to have his mail promptly forwarded to him, that fault cannot be laid at the city's steps.

As to the other six notice violations, Mr. Reints admits he was offered hearings on those property deprivations.  He availed himself of one such hearing.  He refused to attend a second hearing that was offered and scheduled by the city for him.  As to the other four notices, he deliberately chose not to avail himself of his right to those hearings because of his conviction that the hearing board was biased.

---

[6] Defendants assert that no ordinance violation notice issued to Mr. Reints resulted in a deprivation of a constitutionally-protected property interest unless the city abated the nuisance itself.  See Docket No. 128 at p. 18.  Because of the court's statute of limitations analysis, the court considers only the eight violation notices issued after June 7, 2010.  The court understands that each of the eight notices resulted in the city abating the nuisance.  Therefore, the court finds the requisite deprivation of a property interest is implicated.

[7] The notice was issued June 11 and the city abated the nuisance July 27, 2010.  See Docket No. 48 at pp. 24-27; Docket No. 127 at p. 8, ¶44.

[8] The van notice was issued July 21, 2010.  See Docket No. 126-7.  The van nuisance was abated August 10, 2010.  See Docket No. 127 at p. 8, ¶44.

21

Mr. Reints appears to proceed from the notion that the only constitutionally sufficient form of due process is *pre*deprivation notice and hearing.  He opined at his deposition that the city should be required to adopt in each case whatever method of notice (U.S. mail, email, or other) as would actually give notice to the person maintaining the alleged nuisance prior to any action by the city to abate the nuisance.  See Docket No. 126-16 at p. 59, lines 7-15 (depo. p. 58).

As noted above, however, *post*-deprivation notice and hearing are usually appropriate where property rights are concerned.  Logan, 455 U.S. at 435-36; Clark, 375 F.3d at 702.  In addition, South Dakota law allows replevin actions for immediate return of property and damages for taking or injuring property of another.  See SDCL §§ 21-1-1, 21-15-2, and ch. 21-14.  The availability of these state law remedies to Mr. Reints constitute adequate postdeprivation remedies defeating his procedural due process claims.[9]  Clark, 375 F.3d at 702.  Mr. Reints could have brought an action in state circuit court seeking the return of his property, the dissolution of the abatement assessments, and/or damages for the unlawful taking of his property.  These remedies exist even if Mr. Reints is correct that the administrative appeals the city offered him were biased.

---

[9] Because there is an adequate post-deprivation remedy for Mr. Reints, the court need not resolve the parties' conflicting claims about whether the tree was dead or whether the van was operable.  Given the law, those are not material facts.  Even if Mr. Reints is correct, due process is not violated because he had available to him adequate post-deprivation remedies.

22

Mr. Reints relies on Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306 (1950), for his position that the city is constitutionally required to provide actual pre-deprivation notice of alleged nuisances.  The Court stated in Mullane "[a]n elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections."  Id. at 314.  But, as discussed above, procedural due process is a flexible concept and the amount of process that is due depends on the importance of the property interests at stake. Walters, 473 U.S. at 320.

In Mullane, the court was considering the sufficiency of notice given by a bank as trustee of a testamentary trust to the beneficiaries of the trust regarding court proceedings.  Id. at 307.  Failure of the trustee to give beneficiaries actual notice of the judicial proceedings could result in beneficiaries being foreclosed from objecting to the settlement or accounting. Id.  The standard for due process under these facts involving parties to a judicial proceeding is necessarily a higher standard than applies before a city abates a nuisance of grass that is over eight inches high in one's front yard. Mullane does not stand for the proposition that the city's giving of notice via United States Mail in Mr. Reints' case was unconstitutional, especially when the abatement took place several days or weeks or even more than one month after notice was mailed and where a sufficient post-deprivation remedy at state law exists.

Under the qualified immunity analysis, if the court concludes that the plaintiff has failed to show a constitutional violation, qualified immunity should be applied without regard to the defendants' state of mind inquiry.  Pearson, 555 U.S. at 236.  Because Mr. Reints has failed to demonstrate a procedural due process violation even construing the facts in the light most favorable to him, the court recommends that the defendants' summary judgment motion be granted as to qualified immunity on the procedural due process claims.

### 2.    Substantive Due Process

In the Eighth Circuit, substantive due process claims based on zoning decisions must be shown to be "truly irrational governmental actions" before such claims are actionable.  Chesterfield Dev. Corp. v. City of Chesterfield, 963 F.2d 1102, 1104 (8th Cir. 1992).  An example of such a truly irrational governmental action would be applying "a zoning ordinance only to persons whose names begin with a letter in the first half of the alphabet."  Id.  "[T]he theory of substantive due process . . . is properly reserved for truly egregious and extraordinary cases."  Azam v. City of Columbia Heights, 865 F.3d 980, 986 (8th Cir. 2017).  Only government power exercised in an arbitrary and oppressive way that "shocks the conscience" is actionable.  Id.

The Eighth Circuit rejected a substantive due process claim in the context of a city which sought to enforce its housing code only against rental properties, specifically searching out and inspecting such properties, requiring the rental owners to undertake expensive repairs and renovations to their detriment.  See Gallagher v. Magner, 619 F.3d 823, 829-30, 840 (8th Cir.

2010).  Where a city allegedly misinterpreted its municipal code in revoking the plaintiff's landlord rental license, the Eighth Circuit found no substantive due process violation.  See Rozman v. City of Columbia Heights, 268 F.3d 588, 590, 593 (8th Cir. 2001).  In the City of Chesterfield case, the Eighth Circuit held that even if the city knew its zoning ordinances were invalid, its knowing enforcement of such invalid ordinances against the plaintiff did not state a substantive due process claim.  City of Chesterfield, 963 F.2d at 1105.

In Novotny v. Tripp County, SD, 664 F.3d 1173, 1178 (8th Cir. 2011), the court also rejected a substantive due process claim.  In that case, the plaintiff alleged defendants singled him out for weed abatement procedures because he had a long history of hostility toward them and defendants were attempting to silence the plaintiff.  Id. at 1173-75.  The plaintiff asserted defendants were interfering with his property right to engage in his chosen profession, farming, without wrongful interference from defendants.  Id. at 1178.  The plaintiff asserted the defendants had much heavier weed infestations on their land than the plaintiff did, yet plaintiff alone was singled out for abatement.  Id.  The appellate court agreed with the district court that these allegations, even if true, did not "shock the conscience" so as to support a substantive due process claim.  Id.

Mr. Reints alleges the ordinance violation notices pertaining to his Chinese elm tree and van which the city removed from his property were signed by Mr. Chlebeck and mailed to him at his Rapid City house.  He alleges Mr. Nyberg knew during this time that Mr. Reints was out of town.

25

Mr. Reints asserts that Mr. Chlebeck also knew Mr. Reints was out of town.  But Mr. Reints never proves this fact through affidavit or otherwise.  In discovery posed to Mr. Chlebeck by Mr. Reints, Mr. Chlebeck admits he was responsible for issuing the van and dead tree notices and that he mailed those notices to Mr. Reints by U.S. Mail.  See Docket No. 138-1 at pp. 1-2, 6-11, and 18-19.  Mr. Chlebeck admitted he would have been aware of Mr. Reints' email address as of June 9, 2010, when an email from Mr. Nyberg to Mr. Reints was copied to Mr. Chlebeck.  Id. at p. 11 (request no. 44).  However, now some nine years later, Mr. Chlebeck has no memory of Mr. Nyberg telling him anything about Mr. Reints or his location at the time unless the same is reflected in a written document.  Id. at p.14 (request no. 51).

The city did not remove the tree and the van until July 27 and August 10, 2010, respectively.  Even if the city was mistaken in deeming the tree dead and the van a junk car, this does not amount to a substantive due process violation.  City of Chesterfield, 963 F.2d at 1105.  Likewise, if the zoning ordinance itself was invalid, or if the city misinterpreted the ordinance, these facts do not assert an actionable substantive due process claim.  Rozman, 268 F.3d at 590, 593; City of Chesterfield, 963 F.2d at 1105.  Even if the city were singling Mr. Reints out for selective zoning enforcement, that also does not state a substantive due process claim.  Azam, 865 F.3d at 987-88; Novotny, 664 F.3d at 1178; Gallagher, 619 F.3d at 829-30, 840.

In August, 2010, Mr. Reints alleges he had a conversation with Mr. Chlebeck wherein he requested all future notice of ordinance violations be

emailed to him because he was absent from his property.[10]  Instead, Mr. Reints alleges, six more "unconstitutionally vague" notices were issued to him and mailed via U.S. mail to his residence instead of being emailed to him.  These notices appear to have been issued beginning February 25, 2011, and continuing up to the time Mr. Reints filed his amended complaint.

The first notice was for "ice and snow on the sidewalk" on February 25, 2011.  Another was issued August 21, 2012, for "too-tall grass and weeds." Mr. Reints does not describe what the other four notices alleged as ordinance violations.  Nevertheless, he asserts all six notices were unconstitutionally vague and put him in fear of constant invasions of his home and property deprivations.  As is clear from the above-recited cases, the allegations concerning these six notice violations do not state a substantive due process claim.

### 3.    Void-for-Vagueness

The parties do not separately address Mr. Reints' void-for-vagueness claim, but for the sake of completeness, the court briefly does so.  Due process is violated  by unconstitutionally vague criminal statutes.  Johnson v. United States, 576 U.S. ___, 135 S. Ct. 2551, 2556 (2015).  "A statute is unconstitutionally vague if persons 'of common intelligence must necessarily guess at its meaning and differ as to its application.' "  United States v. Posters N Things Ltd., 969 F.2d 652, 659 (8th Cir. 1992) (quoting Connally v. General

---

[10] Mr. Chlebeck denies agreeing to this.  See Docket No. 138-1 at p. 21, Request to Admit No. 76.

Constr. Co., 269 U.S. 385, 391 (1926)).  The burden is on Mr. Reints to demonstrate that the city notices or ordinances are unconstitutionally vague.  Id.

With regard to the van and the tree, those notices of violations and the ordinances upon which they are based are not alleged by Mr. Reints to be vague.  With regard to the grass-cutting and the ice and snow removal notices, Mr. Reints alleges these to be unconstitutionally vague because the notices did not specify *where* in his yard or *where* on his sidewalk the violative condition was observed.

But, as Mr. Reints admitted in his deposition, his property is relatively small.  See Docket No. 126-16 at pp. 79-80 (depo. p. 78-79).  He can stand in his back yard and see all parts of his property.  Id.  His front yard is even smaller than his backyard.  Id. at p. 81, lines 18-21 (depo. p. 80).  Likewise, his sidewalk in front of his property is a relatively short stretch of concrete that can be observed in its entirety in a glance.

Given the size of Mr. Reints' property and the specificity especially of the grass ordinance (grass must be taller than eight inches to qualify as a nuisance, see Docket No. 126-11), the court rejects Mr. Reints' as-applied void-for-vagueness challenge.  The notices and ordinances, and the size of Mr. Reints' property all combine so as to render the allegation of nuisance reasonably apparent to any person of common intelligence.

Although pre-2010 events are beyond the statute of limitations, the court notes one of Mr. Reints' allegations about void-for-vagueness involved a police

officer who came to his front door in 2007 and advised Mr. Reints he must remove a downed tree from the fence separating his back yard from his neighbor's property after the neighbor complained to police.  See Docket No. 126-17 at pp. 20, 32-41 (depo. pp. 118, 130-39).  Mr. Reints knew exactly which tree the police officer was talking about, but asked the police officer "which tree?"  When the officer refused to identify a specific tree or to take a tour of Mr. Reints' property with him, Mr. Reints declared the notice of the nuisance to be void-for-vagueness.  Id.  Mr. Reints' approach does not enjoy support in the law.

Under the qualified immunity analysis, if the court concludes that the plaintiff has failed to show a constitutional violation, qualified immunity should be applied without regard to the defendants' state of mind inquiry.  Pearson, 555 U.S. at 236.  Because Mr. Reints has failed to demonstrate a substantive due process violation or a void-for-vagueness due process violation--even construing the facts in the light most favorable to him--the court recommends that the defendants' summary judgment motion be granted as to qualified immunity on the substantive due process claims.

### 4.    Equal Protection

The equal protection clause requires the government to "treat similarly situated people alike."  Murphy, 372 F.3d at 984.  To show an equal protection violation, Mr. Reints must show:  (1) he is treated differently than a similarly situated class of persons, (2) the different treatment burdens a fundamental right, and (3) there is no rational relation to any legitimate governmental

interest.  Id. (citing Rouse v. Benson, 193 F.3d 936, 942 (8th Cir. 1999) (citing City of Cleburne v. Cleburne Living Ctr., Inc., 473 U.S. 432, 439 (1985))).

The first step in an equal protection case is determining whether the plaintiff has demonstrated different treatment than others similarly situated to him.  Murphy, 372 F.3d at 984.  "To survive summary judgment, he must identify the characteristics of the class he claims to be similarly situated to and present some evidence that other groups within the class were not also restricted in similar ways.  If there is no evidence to support the claim that [the laws] were applied unequally, then summary judgment is appropriate."  Id. (citation omitted).

Here, Mr. Reints identifies no other persons who were similarly situated to himself and treated differently.  Instead, he asserts a "class of one" claim.  A "class of one" equal protection claim was recognized by the Supreme Court in Village of Willowbrook v. Olech, 528 U.S. 562 (2000) (per curiam).  In Olech, property owners the Olechs asked the village to allow them to connect to the village water supply.  Id. at 563.  The village granted the request, but conditioned it on the Olechs granting the village a 33-foot easement.  Id.  All other property owners who had been granted permission to connect to the village water supply were required to grant the village only a 15-foot easement. Id. The Olechs brought suit, alleging the village violated the Olech's Equal Protection rights.  Id.  The Olechs asserted the village acted pursuant to a retaliatory motive arising out of an earlier, unrelated successful lawsuit brought by the Olechs against the village.  Id.

30

The Court held that the Olechs' complaint was sufficient to plead a class of one claim:  a claim that defendant intentionally treated plaintiff differently from others similarly situated and that there was no rational basis for the different treatment.  Id.  Such claims are cognizable under the equal protection clause because they are consistent with the purpose of that clause—"to secure every person within the State's jurisdiction against intentional and arbitrary discrimination."  Id.

After the Olech decision, the Supreme Court clarified that the class of one claim does not apply in the public employment context.  See Engquist v. Oregon Dept. of Agr., 553 U.S. 591, 598 (2008).  In distinguishing Olech, the Engquist Court emphasized the facts of the earlier case involved "the existence of a clear standard against which departures, even for a single plaintiff, could be readily assessed," while the employer-employee context by its very nature "involve[s] discretionary decisionmaking based on a vast array of subjective, individualized assessments."  Engquist, 553 U.S. at 602-03.

In the Eighth Circuit, the class of one claim was held to be inapplicable to the county weed board's enforcement of the noxious weed abatement provisions in the Novotny case, discussed previously.  See Novotny, 664 F.3d at 1178-79.  Novotny had a long history of hostility with his uncle, Virgil, who was on the Tripp County Commission and the uncle's friend, Turnquist, who was on the Tripp County Weed Board.  Id. at 1176.  Novotny frequently wrote letters to the local newspaper openly criticizing the Commission.  Id.  Virgil told the newspaper to quit publishing Novotny's letters or the Commission would

31

publish its legal notices in another paper.  Id.  Novotny claims members of the Commission and the Weed Board had heavier weed infestations than Novotny, but that Novotny was singled out for weed abatement procedures.  Id.  Novotny sued the county, the Commission, the Weed Board, and the sheriff alleging violations of his First and Fourteenth Amendment rights as well as civil conspiracy.  Id. at 1176-77.

The district court granted defendants' motion for summary judgment on all claims and the Eighth Circuit affirmed.  Id. at 1177.  The Novotny court noted that the class-of-one principle does not apply to "state action which by its nature involves discretionary decisionmaking based on a vast array of subjective, individualized assessments."  Id. at 1179 (cleaned up).  "The class-of-one theory prohibits 'arbitrary government classification,' such as where legislation or a regulation is enacted that targets a specific landowner and applies a different rule to him than his neighbors."  Id. (quoting Olech, 528 U.S. 564-65).  However, where the rules themselves are uniformly applicable but state actors exercise discretion in determining enforcement, the class-of-one theory has no application.  Id.  The court likened the defendants' challenged actions in Novotny to a police officer faced with a highway full of speeding motorists where the officer gives only one speeder a traffic citation. Id. at 1179 (citing Engquist, 553 U.S. at 603-04).  Such facts do not support a class-of-one theory.  Id.

Here, also, the same conclusion obtains.  The issuance of ordinance violation notices to Mr. Reints was based on ordinances that are uniformly

32

applicable and the decision to issue a notice to Mr. Reints is based on a number of subjective factors within the purview of the city's officials' discretionary authority.  Id.  Under such facts, the class-of-one theory does not apply.  Mr. Reints has failed to otherwise demonstrate that others similarly situated to himself are treated differently.  Therefore, the court concludes Mr. Reints' equal protection claim fails.

Under the qualified immunity analysis, if the court concludes that the plaintiff has failed to show a constitutional violation, qualified immunity should be applied without regard to the defendants' state of mind inquiry.  Pearson, 555 U.S. at 236.  Because Mr. Reints has failed to demonstrate an equal protection violation even construing the facts in the light most favorable to him, the court recommends that the defendants' summary judgment motion be granted as to qualified immunity on the equal protection claim.

Count seven of Mr. Reints' amended complaint references 42 U.S.C. § 1988.  This provision does not create an independent cause of action, but merely allows the recovery of attorney's fees for successful civil rights claimants.  See 42 U.S.C. § 1988.  Mr. Reints ties his request under § 1988 to his equal protection claim.  See Docket No. 48 at pp. 44-45, ¶¶135-38.  Because Mr. Reints' equal protection claim fails, as discussed above, the court also recommends defendants' summary judgment motion as to count seven should be granted as well.

### 5.    Taking Without Just Compensation

The Fifth Amendment to the United States Constitution provides that private property shall not be taken by the government for public use without just compensation.  See U.S. CONST., amend. V.  Contrary to defendants' assertion that the Fifth Amendment has no application to the states, the Supreme Court has held that the "takings clause" of the Fifth Amendment applies equally to the states and to the federal government.  See Tahoe-Sierra Preservation Council v. Tahoe Reg. Planning Agency, 535 U.S. 302, 306 n.1 (2002).  A government taking can be a physical taking (as with the city's taking of Mr. Reints' tree and van), but it can also be some form of a regulatory taking where the government's enactment of certain laws so restricts a landowner's use of his property so as to amount to a partial taking.  Id. at 322-23.

In order to demonstrate a case for a regulatory taking, Mr. Reints must show (1) the regulation at issue denies him *all* economically beneficial use of his land or (2) based on the totality of the circumstances the regulation substantially interferes with justified expectations in the use of the land. Hawkeye Commodity Promotions, Inc. v. Vilsack, 486 F.3d 430, 441 (8th Cir. 2007).  The second inquiry entails an "ad hoc, factual inquiry" including consideration of the economic impact of the regulation, distinct investment-backed expectations, and the character of the government regulation at issue. Id.

Previously, Fifth Amendment takings claims brought in federal court had a state exhaustion requirement.  Knutson v. City of Fargo, 600 F.3d 992, 997

(8th Cir. 2010). If a state provided an adequate procedure for seeking just compensation, property owners could not pursue a takings claim in federal court until they had used the state procedure and been denied just compensation. Id. at 997-98 (citing Williamson County Reg. Planning Com'n. v. Hamilton Bank of Johnson City, 473 U.S. 172, 195-96 (1985)). However, the Supreme Court overruled Williamson just last term (June 21, 2019), and removed that state court exhaustion prerequisite from suit. See Knick v. Township of Scott, PA, ___ U.S. ___, 139 S. Ct. 2162, 2167-68, 2170 (2019). Therefore, § 1983 plaintiffs are no longer required to satisfy this state court exhaustion before bringing their takings claims in federal court. Id.

Defendants' argument that the Fifth Amendment has no application to Mr. Reints' claims is erroneous. However, they also assert that Mr. Reints waived his takings claim in his deposition. Mr. Reints was asked in his deposition what the substance of his Fifth Amendment claim was, and he responded that it was limited to a due process claim, that he was unsure of the scope of the due process clauses under both the Fifth and the Fourteenth Amendments, so he asserted both. See Docket No. 126-18 at pp. 59-60 (pp. 257-58 of Mr. Reints' depo). When asked whether Mr. Reints was asserting any other Fifth Amendment claim aside from due process, he indicated he was not. Id. In addition, Mr. Reints availed himself of his right to read the deposition for accuracy and sign it. See Docket No. 126-18 at p. 87 (depo. p. 285). He never corrected his answers to counsel's questions about his Fifth Amendment claims in the process of reading and signing.

In his response in opposition to defendants' summary judgment motion, Mr. Reints asserts in a solitary sentence that he has *not* waived his right to assert his takings claim as to his tree and his van.  See Docket No. 140 at p. 10, ¶14.  However, Mr. Reints supplies no law or argument in support of his takings claim other than that one solitary sentence.

Waiver occurs where one possesses a right and, with full knowledge of the material facts, waives that right.  Action Mechanical, Inc. v. Deadwood Historic Preservation Com'n., 652 N.W.2d 742, 749 (S.D. 2002).  The party asserting waiver must show "a clear, unequivocal and decisive act or acts showing an intention to relinquish the existing right."  Id.

The court is cognizant of the fact that Mr. Reints, a lay person, has at all times pertinent to this case—including during his deposition--represented himself.  However, when one reads Mr. Reints' deposition, one cannot help but be impressed by the depth and breadth and subtlety of his legal knowledge.  He has been involved in four civil lawsuits against public entities, including this one.  He was previously employed as a paralegal on the east coast. Furthermore, when counsel deposed Mr. Reints, Mr. Reints had a copy of his amended complaint in his hands during the deposition and counsel went through the complaint with Mr. Reints page by page, often paragraph by paragraph in an entirely fair and clear manner.  See Docket Nos. 126-16, 126-17 & 126-18.  When Mr. Reints responded that his only Fifth Amendment claim was a due process claim, the court concludes he waived his takings claim which is otherwise asserted in the amended complaint.  If he did not waive it in

36

his deposition, he certainly waived it in these summary judgment pleadings by failing to support his claim with citation to facts and legal authority.  See Docket No. 140 & 141.  Accordingly, the court recommends granting defendants' summary judgment motion as to Mr. Reints' Fifth Amendment takings claim.

### 6.    Right to Petition Government for Grievances

Mr. Reints asserts a violation of his First Amendment right to petition his government for grievances in count three of his amended complaint.  See Docket No. 48 at pp. 42-43, ¶¶119-122.  In his deposition, Mr. Reints acknowledged that the district court had ruled his First Amendment rights were not violated.  See Docket No. 126-16 at pp. 37-38 (deposition pages 36-37).  He stated the inclusion of count three in his amended complaint was an oversight.  Id. at p. 38 (p. 37).  However, he also indicated he may make a motion to file another amendment to his complaint adding the claim back in again.  Id.  To provide a complete analysis, the court addresses this claim.

The First Amendment provides "Congress shall make no law . . . abridging . . . the right of the people . . . to petition the Government for a redress of grievances."  See U.S. CONST. amend. I.  Filing a complaint in court is a form of petitioning activity.  McDonald v. Smith, 472 U.S. 479, 484 (1985).

Although the right to petition is important, it is not absolute.  Id.  For example, it does not encompass libelous or slanderous statements nor does it encompass baseless litigation.  Id.  A state (or city in this case), has some power to regulate speech, even governmental petitioning.  Calzone v. Summers,

37

___ F.3d ___, 2019 WL 5667584 at **5-6 (8th Cir. Nov. 1, 2019) (*en banc*).  The scrutiny a court applies (exacting scrutiny, reasonable basis, etc.), to an asserted abridgement of the First Amendment right to petition depends on the nature of how the governmental entity is abridging the right.  Id.

The Eighth Circuit just addressed the petition clause in Calzone.  In that case, Ronald Calzone frequently talked to Missouri legislators about political issues that he found important.  Id. at *1.  Calzone ran a nonprofit corporation, Missouri First, Inc.  Id.  No one paid Calzone to visit with law makers nor did he spend money for the benefit of public officials.  Id.  Nevertheless, the state of Missouri determined Calzone was required to go through the effort and expense of registering as a legislative lobbyist.  Id.  Calzone argued this violated, among other things, his right to petition his government for grievances.  Id. at *2.  The court agreed.  Id.

Here, Mr. Reints does not specify in his amended complaint *how* defendants have allegedly violated his right to petition his city government.  See Docket No. 48 at pp. 42-43, ¶¶119-122.  The "prelude" of his complaint setting forth facts is 41 pages long.  Mr. Reints never indicates which of those facts, spanning more than a decade, are pertinent to his claim that defendants violated his right to petition the government.  Furthermore, in his briefs in opposition to defendants' summary judgment motion, Mr. Reints does not mention his petition claim.  See Docket Nos. 140 & 141.[11]

---

[11] Mr. Reints does state in his amended complaint that a 2004 hearing afforded him by the city was intended to chill his First Amendment and Fourteenth

The court notes Mr. Reints' amended complaint shows he filed innumerable appeals of ordinance violation notices.  The court takes judicial notice that Mr. Reints filed a lawsuit in state court contesting the county's right to collect the city's abatement fees through property tax procedures.  Reints v. Pennington County, 869 N.W.2d 466 (S.D. 2015).  And, of course, he brought this lawsuit and has engaged defendants in litigation for over six years.  As noted above, filing litigation is also a form of petitioning one's government. McDonald, 472 U.S. at 484.  The court is at a loss to see how the defendants have taken away or impinged upon Mr. Reints' power to petition his government for redress of grievances.  The court recommends granting defendants' motion for summary judgment as to Mr. Reints' First Amendment right to petition claim.

### 7.    Conspiracy and Civil Conspiracy

In counts six and eight of his amended complaint, Mr. Reints asserts claims that defendants conspired to violate his civil rights and conspired to violate "state and federal law."  See Docket No. 48 at pp 44-45, ¶¶131-34, 139-40.  Both claims require a showing of a meeting of the minds (an agreement) to accomplish an unlawful objective.  Livers v. Schenck, 700 F.3d 340, 360-61 (8th Cir. 2012); Kirlin v. Halverson, 758 N.W.2d 436, 455 (S.D. 2008). Defendants argue and support their argument with citation to law and the record that there is no evidence of a meeting of the minds among them to

---

Amendment rights.  See Docket No. 48 at p. 11, ¶¶33-34.  As already noted, events occurring prior to June, 2010, are outside the statute of limitations.

accomplish an unlawful objective.  Mr. Reints does not address his conspiracy counts in responding to defendants' summary judgment motion.  See Docket Nos. 140 & 141.  Accordingly, the court recommends defendants' motion on counts six and eight of Mr. Reints' amended complaint be granted.

### 8.    State Due Process Rights

Mr. Reints asserts in his amended complaint that defendants have violated his rights under SDCL § 21-10-6 and all of SDCL ch. 21 and "other provisions of South Dakota law and the Constitution of South Dakota."  See Docket No. 48 at p. 46, ¶¶141-43.  Section 21-10-6 of South Dakota Codified Law provides in pertinent part as follows:

> A public nuisance may be abated without civil action by any public body or officer as authorized by law.  Any municipality, county, or township may defray the cost of abating a public nuisance by taxing the cost thereof by special assessment against the real property on which the nuisance occurred.  If the nuisance abated is an unsafe or dilapidated building, junk, trash, debris, or similar nuisance arising from the condition of the property, the municipality, county, or township may commence a civil action against the owner of the real property for its costs of abatement in lieu of taxing the cost by special assessment.

Defendants have asserted and properly supported in their summary judgment motion that they have not violated this statute.  Mr. Reints does not address the statute or this claim from his amended complaint in responding to defendants' summary judgment motion.  See Docket Nos. 140 & 141. Accordingly, the court recommends granting summary judgment to defendants on count nine of Mr. Reints' amended complaint.  Aside from the specific citation to SDCL § 21-10-6, Mr. Reints' vague invocation in count nine of all of

chapter 21 and "other provisions" of state and federal law is too vague to state a claim.

**D.    Facial Challenge to the City's Ordinances**

The court has previously analyzed Mr. Reints' allegations regarding constitutionality of the city ordinances on an as-applied basis.  It is unclear whether Mr. Reints alleges a facial challenge to the constitutionality of the city's ordinances, but in the event he is asserting such a claim, the court addresses it.

Under South Dakota law, if a party wishes to challenge a municipal ordinance as unconstitutional, the party must serve the South Dakota attorney general with a copy of the proceeding and the attorney general shall be entitled to be heard.  See SDCL § 21-24-8.  It is undisputed that Mr. Reints has never served the attorney general of South Dakota with a copy of this proceeding.  Defendants raise this argument in their initial brief in support of their summary judgment motion.  Mr. Reints does not address the argument in his responsive brief.

There are no South Dakota cases interpreting SDCL § 21-24-8.  However, interpreting a similar statute requiring notice to the attorney general when a facial challenge is made to a *state statute* (SDCL § 15-6-24(c)), the South Dakota Supreme Court has said the rule is procedural and not jurisdictional.  Sharp v. Sharp, 422 N.W.2d 443, 445-46 (S.D. 1988).  Courts have discretion to address a constitutional issue even if the attorney general is not notified of the lawsuit if the case is compelling and "a matter of considerable importance

41

to the public policy of the state." Id. at 446.  In the ordinary case, however, courts are not to rule on the constitutionality of a statute in the absence of notice to the attorney general.  Id.

Here, even if the rule is procedural only, Mr. Reints must at least establish good cause for failing to comply with it.  He simply does not address his lapse at all, even though defendants pointed out the omission in their summary judgment briefing.  In addition, the court does not view the facts of Mr. Reints' case to present an exceptional case of considerable importance to the public policy of the state which would justify the court's reaching the facial constitutionality of the city's ordinances without prior notice to the attorney general.  Sharp, 422 N.W.2d at 445-46.  Accordingly, to the extent Mr. Reints' amended complaint can be read to assert a facial challenge to the city's ordinances, the court recommends granting defendants' summary judgment motion as to that challenge for failure to comply with SDCL § 21-24-8 and failure to establish good cause for failing to comply with that statute.

In addition, because of the court's statute of limitations ruling, there are only eight ordinance violation notices under consideration.  Those notices involved assertions by the city that Mr. Reints had a dead tree on his property; a junk, abandoned or unlicensed vehicle on his property; snow and ice on his sidewalk; and grass and weeds in his yard exceeding eight inches in length. The court fails to see how the ordinances prohibiting these nuisances are unconstitutionally vague.  To the contrary, they are quite specific.  As to the

grass ordinance, Mr. Reints admitted it was not unconstitutional on its face. See Docket No. 126-16 at p. 55, lines 1-6 (depo. p. 54).

To the extent Mr. Reints' complaint is that the process spelled out in the ordinances for dealing with the nuisances is unconstitutional, that argument has been rejected above.  Defendants in this case followed city ordinances when providing Mr. Reints notice and an opportunity to be heard.  If those procedures did not violate Mr. Reints' constitutional rights in an as-applied challenge, they also pass constitutional muster facially.

**E.    City Liability**

In order to hold a municipality liable under § 1983, Mr. Reints must show that there was a policy or custom adopted by the city that was unconstitutional.  See Monell v. Dept. of Social Servs. of City of New York, 436 U.S. 658, 690 (1978).  Mr. Reints asserts the city had a policy or custom of issuing unconstitutionally vague ordinance violation notices to Mr. Reints in order to make him feel insecure in his own home and to take actions abating nuisances on his property beyond that required by the city ordinances. Mr. Reints also argues the city had a policy or custom of providing constitutionally inadequate notice and opportunity to be heard in connection with notices of ordinance violations.

However, the court has concluded that Mr. Reints has failed to show *any* constitutional violations.  Therefore, there can be no municipal liability based upon an alleged policy or custom designed to violate constitutional rights.  The

court recommends defendants' motion for summary judgment be granted as to the city as well as the individual defendants.

**F.    Mr. Reints' Assertion that Further Discovery Should Be Allowed**

Mr. Reints moves the court to invoke FED. R. CIV. P. 56(d) to deny summary judgment.  FED. R. CIV. P. 56(d) provides:

> (d)    When Facts Are Unavailable to the Nonmovant.
>
> If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may:
>
> (1)    defer considering the motion or deny it;
>
> (2)    allow time to obtain affidavits or declarations to take discovery; or
>
> (3)    issue any other appropriate order.

Usually, summary judgment is proper "only after the nonmovant has had adequate time for discovery." Toben v. Bridgestone Retail Operations, 751 F.3d 888, 894 (8th Cir. 2014)  (citations omitted).  Nonmovants may request a Rule 56(d) continuance "if they otherwise cannot present facts sufficient to justify their opposition.  This option exists to prevent a party from being unfairly thrown out of court by a premature motion for summary judgment."  Id. (citations omitted).  A Rule 56(d) continuance is only appropriate, however, if the movant files an affidavit which affirmatively shows how the discovery or delay he seeks will allow him to rebut the movant's showing that there is an absence of a genuine issue of material fact.  Id.

Rule 56(d) does not require trial courts to allow parties to conduct discovery before entering summary judgment.  Anzaldua v. Northeast

44

Ambulance Fire Protection District, 793 F.3d 822, 836 (8th Cir. 2015). The district courts possess discretion when presented with a Rule 56(d) motion. Id. The court's is discretion is somewhat restricted, however, when the summary judgment motion at issue is based upon qualified immunity. Id. This restriction "reflects the concern that insubstantial claims against government officials be resolved prior to discovery and on summary judgment if possible." Id. (punctuation altered, citation omitted).

When the summary judgment motion pending is based upon qualified immunity, it is not enough for the Rule 56(d) movant to "set forth some facts [he] hopes to elicit from further discovery." Id. at 837 (citations omitted, emphasis added). Instead, the party making the Rule 56(d) motion must "show that the facts sought exist." Id. (citations omitted, emphasis added).

Further, a court presented with a Rule 56(d) motion must exercise its discretion with an eye toward balancing the movant's demonstrated need for discovery against the burden the discovery will place upon the opposing party. Harbert Int'l. Inc. v. James, 157 F.3d 1271, 1280 (11th Cir. 1998). "In qualified immunity cases, the Rule 56(d) balancing is done with a thumb on the side of the scale weighing against discovery." Id. In Harbert the court cautioned that once a defendant raises the qualified immunity defense, "the trial court must exercise its discretion in a way that protects the substance of the . . . defense. It must exercise its discretion so that officials are not subjected to unnecessary and burdensome discovery or trial proceedings." Id. (citing Crawford-El v. Britton, 523 U.S. at 597- 598). See also Garner v. City of

45

Ozark, 587 Fed. Appx. 515, 518 (11th Cir. 2014) (affirming district court's denial of plaintiff's Rule 56(d) motion in a qualified immunity case, explaining "the basic thrust of the qualified immunity doctrine is to free officials from the concerns of litigation, including the avoidance of disruptive discovery," (citing Ashcroft v. Iqbal, 556 U.S. 662, 685 (2009))).

In Lykken v. Brady, 2008 WL 1930029 (D.S.D, Apr. 30, 2008), the plaintiffs argued that it was inequitable for the defendants to be allowed to assert qualified immunity, stay discovery, and then file a fact-intensive summary judgment motion. Id. at *2. In Lykken, the plaintiffs asked the district court to allow certain discovery before ruling on the summary judgment motion. Id. The district court exercised its discretion and allowed some, but not all of the plaintiff's requested discovery. Id. at *3. The court narrowly tailored the permitted discovery to allow resolution of the plaintiff's allegations, while at the same time—as directed by the United States Supreme Court-- protecting the defendants from the burdens of discovery until after the qualified immunity issue was decided. Id. at * 3. The district court in this case did the same here, allowing Mr. Reints to serve defendants with substantial discovery requests and requiring defendants to respond to those requests.

Not only has the district court allowed Mr. Reints to conduct substantial discovery, but Mr. Reints' showing is also deficient under Rule 56(d). He does not state with specificity what evidence exists that he wants to be able to pursue and how that evidence will specifically assist him in defeating defendants' arguments in favor of qualified immunity. When qualified

46

immunity is asserted, Mr. Reints must show not only specific facts he seeks, but that those facts exist.  Anzaldua, 793 F.3d at 837.  Mr. Reints falls far short of this standard.  His primary complaint is that the defendants who are city attorneys have asserted attorney-client privilege to some of his discovery requests and that Mr. Reints does not think every act taken by these defendants in connection with his dealings with the city are protected by attorney-client privilege.[12]

This argument fails to carry Mr. Reints' burden to show specific facts that do exist which he would be entitled to discover if the court allowed.  The court notes the obvious:  if attorney-client privilege applies, documents and testimony are not available regardless of whether discovery is restricted because of the qualified immunity defense or not.

In their reply brief, supporting affidavit and attachments, defendants respond in great detail to Mr. Reints' Rule 56(d) argument.  See Docket No. 145 at pp. 1-16; Docket No. 146.  The court concludes defendants have provided Mr. Reints with substantial discovery—probably more than would typically be allowed when the scope of discovery is limited to qualified immunity. Furthermore, where attorney-client privilege or work product doctrine was invoked, defendants provided redacted documents instead of withholding the

---

[12] Mr. Reints claims that in discovery responses each and every defendant has claimed every communication with any other defendant is shielded from discovery by attorney-client or work-product privilege.  See Docket No. 140 at p. 4, ¶3.  However, Mr. Reints submitted discovery responses from defendants in support of his opposition to summary judgment that belie this assertion. See, e.g. Docket No. 132-1, 135-1, 137-1, 138-1, 139-4, and 139-16.

entire document and defendants provided a privilege log complying with the requirements of Rule 26.  Finally, defendants note that the discovery Mr. Reints takes issue with has been in Mr. Reints' hands for more than four years in some cases.  Mr. Reints' delay in raising his putatitve disagreements with defendants' discovery production is not timely at this late date.

Mr. Reints has failed to make the showing required by Rule 56(d) to prevent defendants' summary judgment motion from being considered on its merits.  Accordingly, the court recommends that the district court consider the motion on the merits on the basis of the record now before the court.

## CONCLUSION

Based on the foregoing facts, law and analysis, this magistrate judge respectfully recommends that defendants' motion for summary judgment [Docket No. 123] be granted in its entirety and that Mr. Reints' amended complaint be dismissed with prejudice.

## NOTICE TO PARTIES

The parties have fourteen (14) days after service of this Report and Recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1), unless an extension of time for good cause is obtained.  Failure to file timely objections will result in the waiver of the right to appeal questions of fact. Objections must be timely and specific in order to require de novo review by the

District Court.  <u>Thompson v. Nix</u>, 897 F.2d 356 (8th Cir. 1990); <u>Nash v. Black</u>, 781 F.2d 665 (8th Cir. 1986).

      DATED November 20, 2019.

                BY THE COURT:

                VERONICA L. DUFFY
                United States Magistrate Judge